## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ALLIED WORLD INSURANCE COMPANY** | : | **CIVIL ACTION** |
| | : | |
| | : | |
| **v.** | : | **NO.  19-2467** |
| | : | |
| **PERDOMO INDUSTRIAL, LLC,** *et al.* | : | |

## <u>MEMORANDUM</u>

**KEARNEY, J.**                                                              **April 15, 2020**

Philadelphia insurer Allied World Insurance Company is pursuing recovery on a September 25, 2018 Judgment we entered in its favor against non-party Orlando Perdomo, Jr. and Perdomo Industrial, LLC on a defaulted performance bond for a construction project in Washington D.C.  Orlando Perdomo, Jr. then filed bankruptcy in the Eastern District of Virginia where he resides.    The insurer is now alleging fraudulent conveyances before us and before the bankruptcy court including Mr. Perdomo's father Orlando Perdomo, Sr. and several entities related to Mr. Perdomo, Jr. fraudulently conveyed assets to hinder the insurer's collection on the performance bond and eventually this Court's Judgment.  Mr. Perdomo, Sr. now moves to dismiss claims against him for three pre-Judgment transactions arguing we lack personal jurisdiction over him, this is not the proper venue for claims against him, and the insurer cannot plead he is a transferee under the fraudulent conveyance law.  The insurer sought no discovery on personal jurisdiction over Mr. Perdomo, Sr.  It does not allege or offer evidence Mr. Perdomo, Sr. knew transactions in early 2017 would frustrate a Pennsylvanian's rights.  We have no present basis to exercise personal jurisdiction over Mr. Perdomo, Sr.  We sever and transfer claims against him to the United States District Court for the Eastern District of Virginia.

I.      **Background of our underlying Judgment.**

Orlando Perdomo, Sr. and his son, Orlando Perdomo, Jr. owned and operated a series of limited liability companies and corporations through which they conducted business in the Northern Virginia and Washington D.C. metro area.  Mr. Perdomo, Sr. and Mr. Perdomo, Jr. formed and jointly owned Perdomo Industrial, LLC until January 2015 when Mr. Perdomo, Sr. assigned his ownership interests to his son.[1]  Around this time, a general contractor, Hensel Phelps, hired Perdomo Industrial to perform "services in connection with a certain construction project located in Washington D.C. known as 'Freedom Plaza.'"[2]  Mr. Perdomo, Jr. and Perdomo Industrial sought to guarantee performance on its subcontract by securing a performance bond.[3]

Four months after his father turned over his ownership interests, Mr. Perdomo, Jr. and Perdomo Industrial secured a $2,184,275 performance bond from Allied World Insurance Company for a construction project in Washington, D.C.[4]  Allied World named Perdomo Industrial as principal and the general contractor Hensel Phelps as obligee.[5]  To secure this performance bond, Mr. Perdomo, Jr. and Perdomo Industrial executed an Indemnity Agreement agreeing to "save harmless and indemnify Allied World for any and all liability, loss, damages, costs, counsel and attorney[s] fees incurred by Allied World by reason or in consequence of having issued any bonds[.]"[6]

Perdomo Industrial then defaulted on the subcontract.[7]  In December 2016, Hensel Phelps noticed Perdomo Industrial of its default, terminated it from the subcontract, and demanded Allied World pay its obligations under the performance bond.[8]  On January 30, 2017, Allied World issued a Demand for Collateral to Mr. Perdomo, Jr. and Perdomo Industrial amounting to $2,750,000.[9]  Allied World requested Mr. Perdomo, Jr. and Perdomo Industrial deliver the collateral to its Philadelphia office.[10]  Hensel Phelps then commenced AAA arbitration proceedings against Mr.

Perdomo, Jr. and Perdomo Industrial under the subcontract.[11]   The arbitrator found for Hensel Phelps and awarded it $3,056,095.05.[12]   Allied World paid Hensel Phelps the total amount of the award.[13]   In July 2017, Allied World sued Mr. Perdomo, Jr. and Perdomo Industrial in this Court to enforce its rights under the Agreement.[14]   After confirming the propriety of venue given their contract with a Pennsylvania based insurer, we entered Judgment in favor of Allied World for $4,010,344.92 on September 25, 2018. [15]

## II.   Fraudulent conveyance allegations in two federal courts.

In two different cases pending here and in the United States Bankruptcy Court for the Eastern District of Virginia, Allied World alleges after it issued its January 30, 2017 Demand for Collateral to Mr. Perdomo, Jr. and Perdomo Industrial,[16] Mr. Perdomo, Sr., Mr. Perdomo, Jr., and entities they owned allegedly conducted a series of transfers to separate their assets and liabilities.

In February 2017, Perdomo Industrial transferred $300,000 to Mr. Perdomo, Sr.[17]   On March 20, 2017, Perdomo Industrial entered an equipment purchase agreement with Perdomo National Wrecking Co., LLC and transferred approximately $600,000 of equipment for $1.00 in consideration.[18]   Perdomo National Wrecking Co., LLC is a limited liability company owned by Mr. Perdomo, Sr. and Mr. Perdomo, Jr.[19]   Mr. Perdomo, Sr. and Mr. Perdomo, Jr. formed Perdomo Realty, LLC in June 2017 and then Perdomo Development Corp. in July 2017.[20]   Around this time, Perdomo Realty, LLC transferred a land parcel, worth approximately $653,400, to Perdomo Development Corp.[21]   We denied the defendants motion to dismiss the first amended complaint finding proper service, proper venue, sufficiently stated claims for fraudulent transfer, and personal jurisdiction as defendants only argued we lacked personal jurisdiction because Allied World failed to sufficiently state an intentional tort claim.[22]

Allied World is bringing these same allegations against Mr. Perdomo, Sr. in the Eastern District of Virginia.  In March 2019, Mr. Perdomo, Jr. filed for Chapter 7 bankruptcy in the United States Bankruptcy Court for the Eastern District of Virginia.[23]  Allied World filed an adversary proceeding in the Bankruptcy Court requesting a denial of discharge under 11 U.S.C. § 727, based on fraudulent conveyance allegations similar to those later filed against Mr. Perdomo, Sr. in this case.[24]  For instance, Allied World claims in its adversary action: "On February 9, 2017, [Mr. Perdomo, Jr.] signed a check to his father, Orlando M. Perdomo, Sr. in the amount of $300,000 from Perdomo Industrial, LLC. [Mr. Perdomo, Jr.] testified that his father 'started demanding he get paid for his commissions, and I paid him.' However, the Defendant no longer has any records relating to Perdomo Industrial, LLC or his substantial payments to his father."[25]  Allied World objected to bankrupt debtor Mr. Perdomo, Jr.'s discharge of debts.[26]  But Allied World does not sue Mr. Perdomo, Sr. or other entity defendants named in this suit in its adversary proceeding. This case appears to be in discovery, and we ordered Allied World to "in good faith coordinate to the fullest extent possible discovery efforts" in the two cases.[27]

The Chapter 7 bankruptcy trustee is also suing Mr. Perdomo, Sr. based on these same allegations. On March 10, 2020, the bankruptcy trustee in Virginia filed an adversary complaint against Mr. Perdomo, Jr. and all Defendants in this case—including Mr. Perdomo, Sr.—based on these (and other) allegations of fraudulent conveyances.[28]  For instance, the trustee alleges "[o]n January 1, 2017, the Debtor and [Mr. Perdomo, Sr.] executed the First Amendment purporting to transfer 50% of the ownership interest to [Mr. Perdomo, Sr.] in exchange for a $300,000 contribution."[29]  The Honorable Brian F. Kenney entered a temporary restraining order on March 11, 2020 and preliminary injunction modifying the earlier order on March 27, 2020, which orders

the Perdomo entities and individuals to comply with a number of conditions including not to execute further transfers of certain assets.[30]

### III.   Analysis

A few months after Mr. Perdomo, Jr. filed for bankruptcy protection in Virginia, Allied World came back to this Court to sue Perdomo Industrial, LLC, Perdomo National Wrecking Co., LLC, Perdomo Development Corp., Perdomo Realty, LLC, Perdomo National Wrecking Group, LLC, Perdomo Workforce of NY, and Mr. Perdomo, Sr. in his individual capacity for alleged involvement in three fraudulent transfers.   Allied World seeks a judgment voiding the alleged fraudulent transfers and compensatory and punitive damages.   This appears to be the same claim the Trustee is pursuing in the Virginia bankruptcy adversary action.

Mr. Perdomo, Sr. now moves to dismiss for failure to state a claim as he is not a transferee under governing fraudulent conveyance law and for lack of personal jurisdiction.[31] Mr. Perdomo, Sr. also argues we should dismiss because venue is improper or at least transfer because venue is inconvenient.   Allied World did not ask for personal jurisdiction discovery in response to Mr. Perdomo, Sr.'s motion.   The other Defendants challenged personal jurisdiction based solely on a failure to state a fraudulent conveyance claim.   They did not raise the same arguments as Mr. Perdomo, Sr.

Absent Allied World pleading or adducing a basis for our exercise of personal jurisdiction over Mr. Perdomo, Sr. consistent with his due process rights, we cannot exercise personal jurisdiction over Mr. Perdomo, Sr.   We must transfer Allied World's claims against him to the United States District Court for the Eastern District of Virginia under 28 U.S.C. § 1631.

### A.   We cannot exercise personal jurisdiction over Mr. Perdomo, Sr.

Mr. Perdomo, Sr. moves under Federal Rule of Civil Procedure 12(b)(2) arguing we may not assert personal jurisdiction over him.  He submits an affidavit supporting his motion swearing he is a Virginia citizen, has lived in Virginia continuously for fifty years, has never lived or voted in Pennsylvania, and was not involved in entering the Indemnity Agreement for Perdomo Industrial with the Philadelphia-based insurer.[32]

Allied World does not contest Mr. Perdomo, Sr.'s affidavit.  It did not seek discovery.  It relies entirely on its allegations, arguing it pleads sufficient facts supporting our exercise of personal jurisdiction over Mr. Perdomo, Sr.   In its second amended Complaint, Allied World pleads it is a New Hampshire corporation with its principal place of business in Philadelphia, Pennsylvania.[33]  It alleges it performed all underwriting activities related to the performance bond and Indemnity Agreement involving Mr. Perdomo, Jr. and Perdomo Industrial at its Philadelphia offices.[34]  In January 2017, one of Allied World's surety underwriters working in Philadelphia demanded Mr. Perdomo, Jr. and Perdomo Industrial submit $2,750,000 as collateral, and requested the collateral be returned to Allied World's Philadelphia office.[35]   We agree with all these facts and retained personal jurisdiction and venue in the case against these parties leading to the September 25, 2018 Judgment we entered against non-party Virginian Mr. Perdomo, Jr. and Perdomo Industrial.

Allied World's entire basis for asserting personal jurisdiction over Mr. Perdomo, Sr. is based on allegations Perdomo Industrial conveyed $300,000 to Mr. Perdomo, Sr. a month after the Demand for Collateral and contemporaneous with Hansel Phelps initiating AAA arbitration.[36]  Other than this conclusory allegation, we have no connection between Mr. Perdomo, Sr. and Pennsylvania. Unlike the default in the performance bond case, this case involves alleged

fraudulent conveyances involving a Virginian long before the lawsuit in this Court.  Allied World does not submit evidence Mr. Perdomo, Sr. negotiated or knew of Allied World's demand when receiving the $300,000 distribution.[37]  Allied World also pleads facts relating to Mr. Perdomo Sr.'s involvement with entity defendants, but we do not impute these contacts to Mr. Perdomo, Sr. as Allied World elected not to plead a piercing of the corporate veil theory of liability.[38]

Pennsylvania's long-arm statute allows us to exercise jurisdiction over out-of-state defendants to the maximum extent allowed by the U.S. Constitution.[39]  When a defendant challenges the court's personal jurisdiction, the plaintiff bears the burden "to come forward with sufficient facts to establish that jurisdiction is proper."[40]  To meet this burden, the plaintiff must "establish[ ] with reasonable particularity" three elements:

> "First, the defendant must have 'purposefully directed [its] activities' at the forum." *O'Connor*, 496 F.3d at 317 (alteration in original) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)). Second, the plaintiff's claims "must 'arise out of or relate to'" the defendant's activities. *Id.* (quoting *Helicopteros*, 466 U.S. at 414, 104 S.Ct. 1868). And third, exercising personal jurisdiction must not "offend traditional notions of fair play and substantial justice." *Id.* at 316 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)).[41]

Whether a plaintiff's claims "arise out of or relate to" the defendant's contacts with the forum state depends, in part, on the type of claim brought.[42]  Intentional torts such as alleged fraudulent conveyance require more: "The defendant [must have] expressly aimed [its] tortious conduct at the forum" to make the forum "the focal point of the tortious activity. And the plaintiff [must have] felt the brunt of the harm in the forum."[43]

### *Allied World does not allege facts allowing us to infer Mr. Perdomo, Sr. purposely availed himself of the privilege of conducting activities in Pennsylvania.*

The challenged plaintiff attempting to sustain personal jurisdiction must first show a defendant has "purposefully avail[ed] [him]self of the privilege of conducting activities within the

forum."[44]  Although physical entrance into the forum is not required, there must be "deliberate targeting of the forum."[45]  "Unilateral activity of those who claim some relationship with a nonresident defendant" is not sufficient and contacts with a state's citizen taking place outside the forum are not purposeful contacts with the forum itself.[46]

Allied World relies on its January 2017 Demand requesting Perdomo Industrial and Mr. Perdomo, Jr. submit $2,750,000 in collateral to its Philadelphia office.  And rather than complying with its Demand, Perdomo Industrial distributed $300,000 to Mr. Perdomo, Sr. one month later. We see how Perdomo Industrial and Mr. Perdomo, Jr. directed activities at the forum through negotiating the performance bond and Indemnity Agreement with Allied World, receiving Allied's Demand, and then distributing cash out of the business rather than delivering it to Philadelphia.

But based on the present record, we lack a basis to find Mr. Perdomo, Sr. purposefully directed activities at Pennsylvania.  Allied World emphasizes the close temporal proximity between its Demand and the distribution to support its suspicions of fraud.  Even taking each of Allied World's allegations as true, it fails to show more than mere suspicions about how Mr. Perdomo, Sr. targeted Pennsylvania.[47]  Allied World does not answer Mr. Perdomo's sworn statement he "was neither a party to nor involved with negotiating the underlying agreement between Perdomo Industrial and Allied World Insurance Co."[48]  Allied World does not allege Mr. Perdomo, Sr. knew of its Demand letter, or the performance bond, which may allow us to fairly infer his accepting the $300,000 from a Virginia company would direct his conduct at Pennsylvania.  Without such allegations, we fail to see how Mr. Perdomo can be said to have purposefully or deliberately targeted this forum.

***Allied World* fails to show its claims arise out of or relate to**
***Mr. Perdomo Sr.'s contacts with Pennsylvania.***

We also fail to see how we could exercise personal jurisdiction over Mr. Perdomo, Sr. based on the second element.  Because Mr. Perdomo Sr. is alleged to have engaged in the intentional tort of fraudulent conveyances, we must consider whether the "arise out of or relate to" element is met by looking to the requisite additional showing for intentional torts.[49]

The parties both cite *Gambone v. Lite Rock Drywall*.[50] Allied World argues *Gambone* confirms personal jurisdiction over Mr. Perdomo, Sr.  Mr. Perdomo, Sr. argues *Gambone* is distinguishable.

In *Gambone*, the Gambones secured a judgment against Advanced Construction Materials and its founder in a securities fraud case.  Through post-judgment discovery, the Gambones uncovered evidence "tending to show that [Advanced Construction and its founder] had engaged in a pattern of transferring [Advanced Construction's] assets for no value in order to thwart [the Gambones'] recovery on their judgment."[51]  "This pattern included the transfer without consideration of certain patents from [Advanced Construction] to Innovative Technologies Enterprises Corp., a British Virgin Islands corporation owned by James Nicholls and Robert Hildreth."[52]

The Gambones then filed a "Motion for Proceedings Supplementary."[53]  The Gambones sought to implead Innovative Technologies and Messrs. Nicholls and Hildreth.[54]  The Gambones then moved to temporarily restrain and to preliminarily enjoin any further transfers between the defendant entities and individuals.[55]  The Honorable Robert F. Kelly held an evidentiary hearing where Mr. Nicholls testified that Mr. Hildreth served on the board of directors of Advanced Construction in addition to owning Innovating Technologies.[56]  Judge Kelly entered a preliminary injunction against the defendant entities and individuals.  These defendants appealed.[57]  Our Court

of Appeals considered the "ultimate issue for resolution" to be whether the District Court properly exercised subject matter and personal jurisdiction in awarding the preliminary injunction.[58]

Our Court of Appeals determined the District Court appropriately exercised personal jurisdiction over a Mr. Hildreth upon analyzing the test specific to intentional torts. "Here, [the defendant] (1) participated in a fraudulent conveyance, which is a species of the intentional tort of fraud, (2) for the purpose of preventing the plaintiffs, who are Pennsylvania creditors, from collecting on a judgment rendered in their favor by a court in Pennsylvania, (3) and thus 'expressly aimed' his conduct at the forum. This was sufficient to subject [the defendant] to the personal jurisdiction of the District Court."[59]

Mr. Perdomo, Sr. argues *Gambone* is distinguishable because it involves a judgment. We are not persuaded the judgment or prejudgment distinction is conclusive. We read our Court of Appeals' direction in *Gambone* to enable our exercise of personal jurisdiction even in a prejudgment context if the defendant directs activities at the forum. But we also read *Gambone* for its specific facts. In *Gambone*, Judge Kelly reviewed jurisdiction over an individual who served on the board of directors of the transferor and owned the transferee entity. We can more readily infer, in the *Gambone* scenario, how this defendant expressly aimed tortious conduct at the forum to make the forum the focal point of the tortious activity. But Allied World fails to draw the connection between the forum and Mr. Perdomo, Sr. Allied World relies on Perdomo Industrial issuing Mr. Perdomo, Sr. a $300,000 cash payment. But we cannot say, based on the present record and absent evidence, Mr. Perdomo, Sr. knew he would frustrate Allied World's efforts to obtain its collateral by accepting the cash payment.[60]

As Allied fails to show how we can exercise personal jurisdiction over Mr. Perdomo, Sr. based on the first two factors of our review, we need not consider whether our exercise of personal

jurisdiction over Mr. Perdomo, Sr. at this stage comports with traditional notions of fair play and substantial justice.[61]

B.      We sever and transfer Allied World's fraudulent conveyance claims against Mr. Perdomo, Sr. to the United States District Court for the Eastern District of Virginia.

Lacking personal jurisdiction over Mr. Perdomo, Sr., we may either dismiss claims against him or sever and transfer the claims against him to a District enjoying personal jurisdiction over him.

A "district court that lacks personal jurisdiction must at least consider a transfer."[62] Congress provides we "shall" transfer the case rather than dismiss it "if [doing so] is in the interest of justice."[63]   We do, however, have "broad discretion" not to transfer.[64]   Our Court of Appeals directs we "may transfer a case at the parties' request or sua sponte" and do not need to "investigate on [our] own all other courts that 'might' or 'could have' heard the case."[65]   "Still, [we] must make some findings under § 1631, at least when the parties identify other courts that might be able to hear their case."[66]

After considering the balance of ongoing efforts, the interest of justice militates in favor of transferring rather than dismissing Allied World's claims against Mr. Perdomo, Sr.   Mr. Perdomo, Sr. requests a transfer to the United States Bankruptcy Court for the Eastern District of Virginia. It is unclear, however, if Allied World has standing to sue Mr. Perdomo, Sr. in its adversary proceeding against Mr. Perdomo, Jr. under 11 U.S.C. § 727.   But Allied World could have sued Mr. Perdomo, Sr. in the United States District Court for the Eastern District of Virginia as Mr. Perdomo, Sr. is admittedly subject to general personal jurisdiction in Virginia.

Our Court of Appeals has "held that where a case could have been brought against some defendants in the transferee district, the claims against those defendants may be severed and

transferred while the claims against the remaining defendants, for whom transfer would not be proper, are retained."[67]  "Nevertheless, before dividing the case, the District Court should weigh the factors favoring transfer against the potential inefficiency of requiring the similar and overlapping issues to be litigated in two separate forums."[68]

We weigh the potential inefficiencies of our transfer.  We already faced inefficiencies in how Allied World has chosen to seek recovery on the surety bond it issued to Perdomo Industrial and Mr. Perdomo, Jr.  We held hearings and entered Orders directing the parties' coordination.[69] Allied World maintains an adversary proceeding in the United States Bankruptcy Court for the Eastern District of Virginia.  The bankruptcy trustee is pursuing an adversary proceeding in the same Court against Mr. Perdomo, Sr. and the entity defendants named in our Court.

We understand by severing Mr. Perdomo Sr.'s claim we would be separating the claim against the transferor (Perdomo Industrial) from the alleged transferee (Mr. Perdomo, Sr.).  But Allied World decided to litigate in this forum against several Virginia entities and a Virginia individual despite its opportunity to bring this case in the Eastern District of Virginia or pursue recovery through the bankruptcy proceedings.  Allied World creates the inefficiency.  And it did not oppose Mr. Perdomo Sr.'s motion to transfer venue for convenience grounds under section 1404 (a).  It is already prosecuting this same claim in the United States Bankruptcy Court for the Eastern District of Virginia.  The bankruptcy trustee is already bringing these claims in the Eastern District of Virginia.  The discovery will occur there.   The remaining entity Defendants did not present the personal jurisdiction arguments we find persuasive today.

Nothing in today's decision precludes a transfer of the remaining claims for the convenience of the parties.   In the accompanying Order, we require Allied World and the entity Defendants to consider either stipulating to transfer the remaining claims to the United States

District Court for the Eastern District of Virginia or show cause as to why we should not transfer the remaining claims under 28 U.S.C. § 1404(a).[70]

## IV.   Conclusion

We appreciate Allied World is seeking to recover on its valid September 25, 2018 Judgment obtained in this Court.   We appreciate it will try every step possible to ensure payment on its Judgment.   If so motivated, it should do so consistent with the Law.   But the due process clause precludes our exercise of personal jurisdiction over a Virginia individual possibly a transferee to at least one of the three challenged transactions.[71]   Orlando Perdomo, Sr. swears to facts demonstrating we lack personal jurisdiction over him for the alleged transaction long before our Judgment.   Allied World did not seek discovery.   It did not request an evidentiary hearing. It rests upon a conclusory allegation.   Its conclusion does not suffice even with all inferences in its favor.   Absent contrary evidence, we cannot exercise personal jurisdiction over Mr. Perdomo, Sr. consistent with due process.

Rather than dismiss Allied World's claims, we will sever and transfer the three fraudulent conveyance claims against Mr. Perdomo, Sr. to the United States District Court for the Eastern District of Virginia.   Allied World did not oppose a transfer of its claims against Mr. Perdomo, Sr. on convenience grounds.    Would be hard to do so.   It is now pursuing the same fraudulent conveyance theories in the United States Bankruptcy Court for the Eastern District of Virginia before Judge Kenney.   The bankruptcy trustee is also specifically pursuing this same theory against Orlando Perdomo, Sr. also before Judge Kenney in the Eastern District of Virginia.   We also direct Allied World and the entity Defendants to either voluntarily transfer to the case with Mr. Perdomo, Sr. or show cause as to why we should not transfer.

---

[1] ECF Doc. No. 62 at ¶¶ 33-34.  In assigning his interest, Mr. Perdomo, Sr. "acknowledge[d] and agree[d] that he may be required and responsible for participating in the bonding and additional obligations of Projects to be performed by and for the Company, and accepts such responsibility." ECF Doc. No. 87, at Ex. C.

[2] ECF Doc. No. 62 at ¶ 18.

[3] *Id.* at ¶¶ 16–18.

[4] *Id.* at ¶ 18.

[5] *Id.* at ¶ 16.

[6] *Id.* at ¶ 18.

[7] *Id.* at ¶ 19.

[8] *Id.* at ¶¶ 19–20.

[9] *Id.* at ¶ 21.

[10] *Id.* at Ex. A.

[11] *Id.* at ¶¶ 22–23.

[12] *Id.*

[13] *Id.* at ¶ 24.

[14] *Id.*

[15] *Id.* at ¶¶ 25–26.

[16] *Id.* at ¶ 29.

[17] *Id.* at ¶¶ 42–45.

[18] *Id.* at ¶ 31.

[19] *Id.* at ¶ 3.

[20] *Id.* at ¶¶ 48–49.

[21] *Id.* at ¶¶ 5–52, 91–98.

[22] ECF Doc. No. 38.

[23] *See Allied World v. Perdomo, Jr.*, 19-10812-BFK (Bankr. E.D. Va.), Doc. 1.

[24] *Id.*

[25] *Id.* at ¶ 83 (internal citations omitted).

[26] *Id.*

[27] ECF Doc. No. 47 at ¶ 4.

[28] *See Gold v. Perdomo Jr.*, 20-10812-BFK (Bankr. E.D. Va.), Doc. 1.

[29] *Id.* at ¶ 226.  Mr. Perdomo, Sr. requests we take judicial notice of facts in the bankruptcy proceeding to determine the merits of Allied World's claims. We decline to do so as we lack personal jurisdiction over him.

[30] *Gold*, 20-10812-BFK (Bankr. E.D. Va.), Docs. 5, 28.

[31] ECF Doc. No. 79.

[32] ECF Doc. No. 79-2.

[33] ECF Doc. No. 62 at ¶ 1.

[34] *Id.* at ¶ 17.

[35] *Id.* at Ex. A.

[36] *Id.* at ¶ 42–45.

[37] Allied World notes, in assigning his interest, Mr. Perdomo, Sr. "acknowledge[d] and agree[d] that he *may* be required and responsible for participating in the bonding and additional obligations of Projects to be performed by and for the Company, and accepts such responsibility."  ECF Doc. No. 87, at Ex. C (emphasis added).  But Allied World fails to show that Mr. Perdomo, Sr. actually participated in the bonding and additional obligations of Perdomo Industrial.  Allied World also recites details about the bonding industry and how Mr. Perdomo Sr.'s conduct is a patterned practice, but Allied World does not allege these observations as facts.

[38] Even if we impute Perdomo Realty's contacts to Mr. Perdomo, Sr. as he is the sole member, Allied World fails to show how Mr. Perdomo, Sr.'s activities through Perdomo Realty connect Mr. Perdomo, Sr. to Pennsylvania.

[39] 42 Pa. Cons. Stat. § 5322(b); *see Kubik v. Letteri*, 532 Pa. 10, 614 A.2d 1110, 1113–14 (1992).

---

[40] *Danziger & De Llano, LLP v. Morgan Verkamp LLC*, 948 F.3d 124, 129 (3d Cir. 2020) (quoting *Mellon Bank (E.) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992)).

[41] *Id.* at 129–30.

[42] *Id.*

[43] *Id.* at 130 (citations and quotations omitted).

[44] *O'Connor v. Sandy Lane Hotel Co*., 496 F.3d 312, 317 (3d Cir. 2007) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).

[45] *Id.*

[46] *Id.*

[47] As we do "not hold an evidentiary hearing" because neither plaintiff nor defendant requested jurisdictional discovery, "the plaintiff need only establish a prima facie case of personal jurisdiction and the plaintiff[] [is] entitled to have [his] allegations taken as true and all factual disputes drawn in [his] favor." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir.2004).

[48] ECF Doc. No. 79 at Ex. A.

[49] *Gambone v. Lite Rock Drywall*, 288 F. App'x 9 (3d Cir. 2008) (considering fraudulent transfer as an intentional tort).

[50] *Id.*

[51] *Id.* at 10.

[52] *Id.* at 10–11.

[53] *Id.* at 11.

[54] *Id.*

[55] *Id.*

[56] *Gambone v. Advanced Const. Material Corp.*, No. 01-1071, 2005 WL 3008895, at *3 (E.D. Pa. Nov. 9, 2005), *aff'd sub nom.*, *Gambone*, 288 F. App'x 9 (3d Cir. 2008).

[57] *Gambone*, 288 F. App'x at 11.

[58] *Id.*

[59] *Gambone*, 288 F. App'x at 14. We note *Gambone* predates the Supreme Court's decision in *Walden v. Fiore*, 571 U.S. 277, 284 (2014).

[60] While we denied Mr. Perdomo Sr.'s previous motion to dismiss for lack of personal jurisdiction, ECF Doc. No. 38, which he jointly filed with other entity defendants, ECF Doc. No. 36, we did so because the defendants there argued we lacked personal jurisdiction because Allied World failed to plausibly state a claim for an intentional tort.   As we found Allied World plausibly stated a claim for an intentional tort, we denied the defendants' arguments.  We also denied the two New York Defendants' motion to dismiss for lack of personal jurisdiction on this same ground. ECF Doc. No. 89.

While Mr. Perdomo raises new arguments in the present motion, he preserved his right to challenge personal jurisdiction under Federal Rule of Civil Procedure 12(h), which Allied World does not contest.

[61] *Burger King*, 471 U.S. at 476.

[62] *Danziger & De Llano, LLP*, 948 F.3d at 132.

[63] 28 U.S.C. § 1631.

[64] *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 883 (3d Cir. 1995).

[65] *Danziger & De Llano, LLP*, 948 F.3d at 132 (citing 28 U.S.C. §§ 1404(a); *Amica Mut. Ins. Co. v. Fogel*, 656 F.3d 167, 171 (3d Cir. 2011); *Island Insteel Sys., Inc. v. Waters*, 296 F.3d 200, 218 n.9 (3d Cir. 2002)).

[66] *Id.*

[67] *D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 110 (3d Cir. 2009).

[68] *Id.* (citing *Sunbelt Corp. v. Noble, Denton & Assocs.*, 5 F.3d 28, 33–34 (3d Cir.1993)) (stating that a court "should not sever if the defendant over whom jurisdiction is retained is so involved in the controversy to be transferred that partial transfer would require the same issues to be litigated in two places") (internal quotations omitted).

[69] ECF Doc. Nos. 47, 65, 77.

[70] Unlike their plead defense of improper venue, inconvenient venue can be raised after an Answer so long as timely. *See Schwilm v. Holbrook*, 661 F.2d 12, 16 (3d Cir. 1981) (Section 1404(a) does not include a time limitation); *see also Nichols v. Vilsack*, 183 F. Supp. 3d 39, 42 (D.D.C. 2016); 17-111 Moore's Federal Practice – Civil § 111.12.  The two New York entity Defendants have yet to file an Answer.  The same parties are proceeding in the Eastern District of Virginia, albeit before Judge Kenney in the Bankruptcy Court.  We appreciate Allied World's choice of forum is given significant deference, but we wonder whether balancing the factors warrants our exercise of discretion in transferring for the convenience of the parties.

[71] The substantive merits of this fraudulent conveyance claim under Virginia's fraudulent conveyance law may lead the transferee court to find Allied World has not stated a claim for two of the three challenged conveyances against Mr. Perdomo, Sr. subject to possible amendment after discovery.

Virginia law applies because Mr. Perdomo, Sr. has been in Virginia at all relevant times including at the time of the alleged fraudulent transfers in 2017. "[A] corporation is a legal entity separate and distinct from the stockholders or members who compose it." *Dana v. 313 Freemason*, 587 S.E.2d 548, 553 (Va. 2003) (citing *Cheatle v. Rudd's Swimming Pool Supply Co., Inc.*, 360 S.E.2d 828, 831 (Va. 1987)). When a corporation's unlawful action causes injury, "the corporation . . . is directly liable for any judgment obtained against it by the injured party." *Id.* "Although under appropriate circumstances, the injured party may seek to pierce the veil of the corporation to impose liability against its stockholders, such action is dependant [sic] upon first obtaining a judgment against the corporation." *Id.* The doctrine of piercing the corporate veil applies to limited liability companies as well as corporations. *Erie Insurance Exchange v. EPC MD 15, LLC*, 822 S.E.2d 351, 356 (Va. 2019) (citing *Gowin v. Granite Depot, LLC*, 634 S.E.2d 714, 719 (Va. 2006)) ("A limited liability company is an entity that, like a corporation, shields its members from personal liability based on actions of the entity."); *see also Moore v. Law Offices of Shapiro, Brown & Alt, LLP*, 2015 WL 4877845, at *5 n.5, (E.D. Va. Aug. 13, 2015) ("Generally, Virginia law treats piercing the corporate veil of traditional corporations and other limited liability entities in the same manner."). "Generally, when a plaintiff has a claim against a limited liability company, the plaintiff may only pursue that claim against the limited liability company itself and not its members." *A.G. Dillard, Inc. v. Stonehaus Construction, LLC*, No. 15-1182, 2016 WL 3213630, at *2 (Va. June 2, 2016) (citing VA. CODE ANN. § 13.1-1019 (West 2015)). This "do[es] not change merely because the [limited liability company] has only one member." *Erie Insurance Exchange*, 822 S.E.2d at 356-57.

Virginia law provides "conveyances given 'with intent to delay, hinder or defraud creditors' are void except as to purchasers for valuable consideration without notice of the fraud or the fraudulent intent of the immediately prior grantor." *C.F. Trust v. Peterson*, No. 97-2003, 1999 WL 33456231, at *7 (E.D. Va. Jan. 8, 1999) (citing VA. CODE ANN. § 55.1-400 (West 2019)). "Sections [55.1-400] and [55.1-401] [of the Virginia Code] void certain transfers but neither statute imposes liability on parties who are not transferees or beneficiaries." *In re Rescue Rangers, LLC*, 576 B.R. 521, 529 (Bankr. E.D. Va. 2017). A *prima facie* case for fraudulent transfer is made out when a plaintiff alleges a conveyance with at least one "badge[] of fraud," which include: (1) retention of an interest in the transferred property by the transferor; (2) transfer between family members for allegedly antecedent debt; (3) pursuit of the transferor of threat of litigation by his creditors at the time of the transfer; (4) lack of or gross inadequacy of consideration for the conveyance; (5) retention or possession of the property by transferor; and (6) fraudulent incurrence of indebtedness after the conveyance. *Fox Rest Assocs. v. Little*, 717 S.E.2d 126, 131-32 (Va. 2011). In *A.G. Dillard, Inc. v. Stonehaus Construction, LLC*, the Virginia Supreme Court found the creditor stated valid claims for corporate veil piercing and fraudulent conveyance to pursue a defendant owner of a transferee entity. *A.G. Dillard*, 2016 WL 3213630, at *1-2. A.G. Dillard sought to collect a judgment it obtained against Stonehaus Construction, LLC by piercing its corporate veil to reach assets of Robert and Kedra Hauser and other limited liability companies Mr. Hauser created and used to protect Stonehaus Construction, LLC's assets. *Id.* at *1. A.G.

Dillard alleged Mr. Hauser or an entity controlled by him as a "Member and/or Manager" of five limited liability companies: Stonehaus Construction, LLC, Stonehaus, LLC, Bondstone Ventures, LLC, Stonehaus Realty, LLC, Bondstone Operations Group, LLC. *Id.* A.G. Dillard alleged Stonehaus Construction, LLC conducted fraudulent conveyances to Mr. and Mrs. Hauser and each of these companies, and badges of fraud such as conveyances made without valuable consideration and conveyance of assets while pursued by A.G. Dillard as a creditor. *Id.* at *5. The Virginia Supreme Court concluded A.G. Dillard established a *prima facie* claim for fraudulent conveyance because it alleged badges of fraud associated with fraudulent conveyances Stonehaus Construction, LLC made each other individual defendant. *Id.*

*A.G. Dillard* is distinct. A.G. Dillard alleged fraudulent transfers involving each individual defendant as a transferor or transferee. *Id.* at *5. But Allied World only claims Mr. Perdomo, Sr. to be a transferee in the Count II transfer, which Mr. Perdomo, Sr., does not move to dismiss. In the alleged Count I fraudulent transfer, Perdomo Industrial transferred Perdomo National Wrecking Co., LLC approximately $600,000 of equipment for only $1.00 in consideration. ECF Doc. No. 62 at ¶ 31. In the alleged Count III fraudulent transfer, Perdomo Realty, LLC transferred a land parcel worth approximately $653,400, to Perdomo Development Corp. *Id.* at ¶ 5-52, 91-98. Both of these transfers occurred between limited liability companies or corporations owned by Mr. Perdomo, Sr., Mr. Perdomo, Jr. or both of them. In neither transfer, Mr. Perdomo, Sr. played the role of transferor or transferee as required by Virginia Code. VA. CODE ANN. § 55.1-400 (West 2019). To hold Mr. Perdomo, Sr. personally liable for conduct of a company he is a member or manager, Allied World must plead a piercing of the corporate veil theory. *See A.G. Dillard*, 2016 WL 3213630, at *1-2.

"In rare instances, a limited liability company's corporate veil may be pierced to hold a member personally liable." *A.G. Dillard*, 2016 WL 3213630, at *2. "[W]hile there is no single rule or standard and the determination is fact-specific, 'when the unity of interest and ownership is such that the separate personalities of the [limited liability company] and the individual no longer exist and to adhere to that separateness would work an injustice'" piercing the corporate veil is appropriate. *Id.* (citing *Dana*, 587 S.E.2d at 553-54; *RF&P Corp. v. Little*, 440 S.E.2d 908, 913 (Va. 1994)).

But Allied World does not plead a piercing of the corporate veil theory. A court could construe Allied World's claims against Mr. Perdomo, Sr. in his individual capacity. Because a "member [of a limited liability company] is not personally liable to third parties for the liabilities a limited liability company 'solely by reason of being a member, manager, organizer or agent of [the] limited liability company,'" and because Allied World admits it does not plead a piercing of the corporate veil theory, Allied World's Count I and Count III claims against Mr. Perdomo, Sr. may be dismissed upon further review and absent an amendment once Allied World obtains a Rule 11 good faith basis to plead Mr. Perdomo, Sr.'s transferee liability for these two transactions.